

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 26, 2019

**VIA ECF**

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York  10007

    Re: *United States* v. *Elliot Halberstam*, 15 Cr. 825 (ALC)

Dear Judge Carter:

    The defendant in the above-captioned case, Elliot Halberstam, is scheduled to be sentenced on February 28, 2019, for his offense in this case; namely, enticing a minor victim to engage in illegal sexual contact and enticing that minor to produce child pornography.  The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's pre-sentence submission, filed February 25, 2019 ("Def. Mem.").

    The defendant pled guilty pursuant to a plea agreement in which the parties agreed that the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range applicable to the defendant's conduct is 135 to 168 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government submits that a sentence within that range is warranted.

## Background

### A.    The Offense Conduct

    The defense submission in this case significantly minimizes the impact of the defendant's conduct and attempts to focus the Court on irrelevancies. To the contrary, Halberstam's conduct in this case was disturbing, calculated, and extraordinarily damaging to the minor victim (the "Victim"). In sum, the defendant met the Victim as a patient through his work as a child therapist in New Jersey. The Victim was approximately 12 years old at the time. A few years later, the defendant ultimately began grooming the Victim; engaged in increasingly sexualized chats via text and email, including convincing the Victim to transmit nude images of himself to him; and, finally, convinced the then-16-year-old Victim to have sex with him. (*See* Probation Office's Pre-Sentence Investigation Report ("PSR") ¶¶ 10-43.)

On and off from 2011 through 2014, the Victim was a therapy patient of the defendant's. (PSR ¶ 10.) Beginning in 2014, the defendant began exchanging text messages with the Victim and, shortly thereafter, beginning in at least March 2015, those communications began to include sexually explicit content. (PSR ¶ 10.)

In March 2015, the defendant introduced the Victim to an email account with a false persona (the "Sham Account"). In fact, the defendant himself used the Sham Account, but purported to be "Joshua Davis," and began communicating with the Victim about the Victim's interest in modeling. The chats between the defendant and the Victim became increasingly sexually explicit. The defendant persuaded the Victim to send photographs and videos of the Victim naked and masturbating to the defendant, all under the guise of helping his modeling career. (PSR ¶¶ 13-20.) The defendant did so both under his real identity and using the "Joshua Davis" persona. As set forth in great detail in the PSR and in the Complaint, the defendant led the Victim in overtly sexual conversations, rating his appearance and attempting to persuade the Victim to show himself in sexually explicit ways. When the Victim resisted, the defendant pushed him. For example, in April 2015, the Victim wrote, "we agreed there wouldn't be porn shots this time," to which the defendant responded, "we agreed to soft porn, remember?" (PSR ¶ 19.) The Victim ultimately obliged, and over time sent numerous photos and videos constituting child pornography to the defendant by text message.

Later in 2015, the defendant went further. He began pushing the limits of how far the Victim was willing to go and raised the prospect of an in-person photo shoot in which the defendant would have sex with the Victim. The defendant wrote: "You need to lose your cherry – no, no actual fucking yet, but you need your first blow job." (PSR ¶ 21.) Then, on multiple occasions in May and June 2015, the defendant engaged in oral sex with the Victim and photographed himself doing so. One such instance was in the defendant's private therapy office. (PSR ¶ 27.) On another occasion, the defendant provided the Victim with alcohol and Cialis. (PSR ¶¶ 22, 35.) The defendant also personally took photographs of the Victim naked and masturbating. The subject line of the emails in which these photographs were sent is "Mission Accomplished." (PSR ¶¶ 28, 31.) At the time of the relevant conduct, the Victim was 16 years old.

In addition to the defendant's sexual contact with the Victim and the solicitation of pornography involving the Victim, the defendant's behavior toward the Victim was extremely psychologically manipulative. During the course of the defendant's grooming of the victim, the defendant simultaneously played himself—the trusted psychologist and family friend—and "Joshua Davis," playing the two personas off of each other to manipulate the Victim. The defendant consistently used his position as a trusted figured in the Victim's life to encourage him further and further into pornographic and sexual activity.

### B. The Defendant's Plea and Applicable Guidelines Range

The defendant was charged in November 2015 in a three-count Indictment (the "Indictment") charging him with (1) coercion and enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b); (2) production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) and 2; and (3) receipt of child pornography, in violation of 18 U.S.C.

§ 2252A(a)(2)(B), (b)(1) and 2.  On July 9, 2018, the defendant pled guilty to Count One of the Indictment pursuant to a plea agreement with the Government.

As agreed by the parties, the defendant's stipulated Guidelines Range is 292 to 365 months' imprisonment (the "Stipulated Guidelines Range").  The Probation Office included an additional two-level enhancement pursuant to U.S.S.G. § 3B1.3 because the defendant abused his position as a licensed social worker and former therapist of the Victim.  Accordingly, Probation calculates the Guidelines range as 168 to 210 months' imprisonment.  (PSR ¶¶ 51-62, 127-28.)  The Probation Office recommends the defendant be sentenced to 168 months' imprisonment followed by 10 years of supervised release.  (PSR at 32-34.)

## Discussion

The Government submits that a sentence within the Stipulated Guidelines Range is necessary and appropriate to reflect the seriousness of the offense conduct.  The Government acknowledges that, as set forth in the defendant's sentencing submission, the defendant's history and characteristics includes mitigating factors.  However, the defendant's manipulative conduct, his trusted position, and his destructive effect on the Victim all warrant a substantial sentence exceeding the mandatory minimum term of incarceration.

The defendant's crimes here are twofold.  *First*, the defendant enticed a minor to engage in illegal sexual conduct by inducing him to have sex with him and photograph it.  Many defendants are sentenced to very lengthy terms of incarceration for simply *attempting* to entice a minor to have sex; here, the defendant actually went through with a contact offense, for which he meticulously groomed the Victim over time.  *Second*, the defendant enticed the Victim innumerable times to send pornographic images and videos of himself over the internet, using guilt and psychological coercion in his attempts.

The defendant's crimes are among the most serious under the law.  The Government submits that a lengthy prison sentence is appropriate to reflect the seriousness of the defendant's offense, promote respect for the law and its efforts to eradicate the enticement of minors to participate in illegal sexual activity, and to provide just punishment for the conduct here.  *See* 18 U.S.C. § 3553(a)(2)(A).

There is no question or debate about the seriousness of these offenses, and the Government will not here belabor the fact that such conduct shocks the conscience.  *See*, *e.g.*, *New York* v. *Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.").  This is quite obviously true for the defendant's sexual contact and activity with the minor Victim; it is equally true with respect to his efforts to induce him to transmit sexualized images and videos. *See United States* v. *Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children."). Indeed, it is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States* v. *Williams*, 553 U.S. 285, 307 (2008).

In determining an appropriate sentence, the Guidelines provide relevant guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). The Guidelines are the "starting point and the initial benchmark" in sentencing proceedings, *Gall* v. *United States*, 552 U.S. 38, 49 (2007), before the Court considers the factors outlined in Title 18, United States Code, Section 3553(a). The Government notes that the Second Circuit has acknowledged that the relevant Guideline here "is fundamentally different from most," because the offense level and enhancements have been increased at the instruction of Congress, and therefore must be "applied with great care" to avoid "unreasonable sentences." *United States* v. *Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). Such care is necessary because the enhancements apply with such frequency that they "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Id.* at 186.

This, however, is not a "run-of-the-mill" case. The defendant did not just possess child pornography—he solicited and created it, by enticing the Victim to engage in live sexualized depictions. Moreover, following a long process of grooming and manipulation, that solicitation and production of child pornography eventually resulted in the defendant having sex with the Victim and creating child pornography of that encounter. Given that conduct, the Guidelines in this case do not result in the unwarranted enhancements of which the Second Circuit has warned.

A Guidelines sentence is additionally warranted because of the effects of the defendant's crime. Halberstam's conduct inflicted serious damage on the Victim's psychological health, emotional stability, and personal relationships. The defendant began grooming the Victim after the Victim was his patient and ultimately enticed him to create child pornography and have sex with the defendant. As is evident from the impact statements submitted by the Victim, and as the Government expects will be clear from the Victim's and his family members' in-court statements at the time of sentencing, the defendant's actions have been utterly devastating to all of them.

The Government acknowledges the defendant's claim that he may have been in love with the Victim.[1] However, his communications instead reflect a relentless drumbeat of sexualization and manipulation of a vulnerable young man. During the time the defendant spent grooming, and then engaging sexually with, the Victim, it had a profound impact on the Victim's mental health. As recounted by the Victim's impact statement, he began suffering from anxiety, an eating disorder, and depression as a result of the defendant's abuse. These effects are not uncommon for similarly-victimized individuals; to the extent they may seem extreme, it is important to note that the defendant's grooming and victimization of the Victim took place during a formative period of the Victim's adolescence. Because of his position as a mental health professional, the defendant should have been all the more aware of the consequences of his actions.

These consequences may well last beyond the defendant's prison term. For these reasons, as well as to protect other minors from the defendant in the future, a lengthy term of supervised

---

[1] The defendant suggests that "discomfort with homosexuality plays a role in this matter." (Def. Mem. 32.) That suggestion is baseless and should not affect the Court's sentencing analysis. The defendant's crime is the enticement of a minor to produce child pornography, not homosexuality. The Government's charging decision and sentencing recommendation would have been no different had the defendant's victim been female.

release, with the special condition that the defendant never be allowed to contact the Victim or his friends or family, is warranted.

## Conclusion

Accordingly, the Government respectfully requests that the Court impose upon the defendant a sentence within the Stipulated Guidelines Range of 135 to 168 months' imprisonment, as well as a lengthy term of supervised release, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Andrew D. Beaty
Assistant United States Attorney
Tel.: (212) 637-2198

Cc: Stacey Richman, Esq., counsel for defendant (via ECF)